[Bibb v. Montgomery Iron Works.]

# Bibb v. Montgomery Iron Works.

*Bill in Equity to cancel Bonds of the Corporation.*

1. *Bill in equity to cancel bonds of a corporation; when properly dismissed.*—A bill in equity, filed by a *bona fide* holder of bonds of a corporation, seeking the cancellation of certain other bonds of the same corporation in the hands of stockholders of the company, on .the ground that they were issued to said stockholders without the payment by them of any consideration, and are not proper charges upon the property, which does not aver that the said company has made default in the payment of interest due on its bonds, including those held by the defendant, that it has in no way misused or impaired the property mortgaged as security for the said bonds, and which does not aver that the complainant has any lien upon, claim to or control over the earnings of the said company, or upon the money received by it as a loan, is without equity and is properly dismissed.

APPEAL from Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on February 10, 1892, by Josephine M. Bibb, against the Montgomery Iron Works and others ; and sought to have certain bonds of the defendant corporation held by some of the stockholders cancelled, and to have the holders of said bonds to account to the corporation for the interest received by them on said bonds. The averments of the bill are sufficiently stated in the opinion.

The defendants interposed several demurrers to the bill, and also moved to dismiss the bill for the want of equity. On the submission of the cause upon the demurrers and motion to dismiss, the chancellor overruled the demurrers, but sustained the motion to dismiss the bill.

The present appeal is prosecuted by the complainant, who assigns as error this decree of the chancellor.

ROQUEMORE, WHITE & DENT and E. P. MORRISETT, for appellant.—A creditor of a corporation has a standing in a court of equity, without a request upon, and a refusal by, the corporation to sue, to prevent the misappropriation of corporate funds if his debt will be there-

by endangered.—Wood's Field on the Law of Corporations, § 365, and authorities cited in note 1.

TOMPKINS & TROY, *contra.*—(1.) No state of facts is alleged which show any legal excuse for not calling on the corporation to bring the suit, and the rule in such cases applies as well to suits brought by creditors as stockholders of corporations.—*Newby v. Oregon Cen. R. R. Co.*, 1 Saw. 63 ; *Penn. Bank v. Hopkins*, 16 Amer. & Eng. Corp. Cases 71. (2.) If the corporation had refused to bring the suit, appellant could not have instituted the same until the trustee had been asked to do so and had refused. Jones on Cor. Bonds & Mortg., §§ 289, 294-5. (3.) Even if the complainant had brought herself within the above rule the facts alleged in the bill would not entitle her to any relief.—Jones on Cor. Bonds & Mortg., § 196 ; *In re Cape Briton Co.*, L. R., 26 Ch. Div. 221 ; *Morrison v. Globe Panorama Co.*, 28 Fed. Rep. 817 ; *Foster v. Seymour*, 23 Fed. Rep. 65.

COLEMAN, J.—The bill avers that Joseph W. Dimmick, W. L. Chambers, Geo. W. Craik, P. B. Bibb, A. M. Baldwin and B. McAdam were the promoters, organizers and corporators of the Montgomery Iron Works ; that it was incorporated with its capital stock fixed at $50,000, which was subscribed and paid for by them, by "turning over and delivering to the corporation a certain lot of land, houses and manufacturing material jointly owned by them for which they paid $25,000, in the following proportion and amounts : P. B. Bibb, $7,500, Dimmick, Baldwin and Chambers, each, $5,000, and Craik, $2,500, and that $25,000 was its full value." This statement fails to account for the interest of Mc-Adam. The omission may not be material for a determination of the questions raised in the record. The bill avers that stock was issued to the subscribers in double the amount of the respective sums paid by them, and that the amount actually paid in is of no greater value than the original cost of the purchsae, to-wit : $25,000. The bill further charges that the corporation issued its bonds to the amount of fifty thousand dollars, which were secured by a mortgage upon its property. The bonds bore interest at 8 *per cent.*, the interest payable annually, and upon default of payment of interest the mortgage might be

foreclosed. The bonds do not mature for several years yet in the future. Of the $50,000 of the issue of bonds, $25,000 were placed in the treasury for the use of the company, and which have been used, sold, hypothecated or placed as collateral security to the First National Bank of Montgomery. Of the remaining bonds, not thus disposed of, complainant claims to be a *bona fide* holder and owner of $7,500 for value, and without notice of any defect or irregularity in their issue, that the said Dimmick received $5,000, Balwin, $5,000 and Craik, $2,500, without paying any consideration therefor, but received them solely in consideration of being stockholders, and are not to account for them in any way. The bill further charges that the assets of the company are not equal in value to its liabilities, that the business is not successfully conducted, and to meet its liabilities, it is compelled to borrow money and increase its indebtedness ; that either from its earnings or from money borrowed, the annual interest accruing on its bonded indebtedness, including those held by the said Dimmick, Baldwin and Craik, is paid. The conclusion of the pleader is, that the bonds held by the stockholders, for which they paid nothing, are illegal, and in law are not proper charges upon the property of the company. The prayer of the bill is, that these bonds be cancelled, and that the holders be required to account to the corporation for the interest received by them on these bonds.

To properly understand the case made by the bill, it is necessary to note some omissions of averments which seem to us to be material for a proper consideration of the case intended to be raised by the bill. It is not stated, that the company has made default in the payment of the interest due on its bonds, including those held by complainant. It is not stated that the corporation company is, in any manner, impairing the property mortgaged as a security for the payment of the bonds. It is not pretended that complainant has any lien upon or claim to, or control of the earnings of the company, or its management, or the money received by it as a loan. What claim has the complainant, whose bonds are not yet due, and to whom there has been no default in the payment of interest, to the money earned by the corporation ; or what right to enjoin her debtor from contracting other debts, or applying its own money to the discharge of other obligations, contracted in the regular course of its business?

It is not pretended that the corporation company has in any manner misused or impaired the property which is mortgaged to secure complainant's debt.

Some questions are presented and argued, upon which all the members of the court are not agreed, but their decision is not necessary for a determination of the case. The court is unanimous in the opinion that the bill is without equity, and that the decree of the chancellor, dismissing the bill, is free from error.

Affirmed.

